Good morning, Your Honors, and may it please the Court, Dale Shumgart from Mount Hope Church. If I could reserve four or five minutes for rebuttal. The District Court's decision is a sharp break from cases involving Rule 45C sanctions, and if upheld, risks turning Rule 45 into a fee-shifting provision. Rule 45 is intended to punish litigants who issue abusive subpoenas, subpoenas that are The District Court erred in this case because he applied the wrong legal standard. He did not, and he could not, find bad faith or improper purpose in an undue burden because Mount Hope only requested seven emails, identifying information for seven emails, that were taken from very detailed planning communications about the disruption and blockade of its church services. The purpose of that subpoena was to find missing defendants so they could be included in an injunction, and Mount Hope was fully agreeable to a protective order that would protect any privacy or First Amendment concerns. The District Court gave three brief reasons for its sanctions order. First, it said that the subpoena was based on speculation. Second, it said that Mount Hope's purpose for the subpoena shifted. And third, it said essentially that Mount Hope's First Amendment analysis was not sufficient. None of those reasons is a basis for Rule 45C sanctions because none of them show bad faith or improper purpose in an undue burden. Let me ask you a question on that. Do we have a Ninth Circuit precedent that elaborates a standard for a district court to follow in giving sanctions under Rule 45C? I think probably Mattel, the Walking Mountain Productions, is probably the most clear case on that issue. There, the Ninth Circuit held that, said that because the district court had found improper purpose and bad faith and an unreasonable burden, that it was not an abuse of discretion to impose Rule 45C sanctions, but it was conditioned on that, and the conduct in that case was sort of the typical Rule 45C conduct. I mean, it was subpoenas issued for collateral purposes, for the purpose of harassing the recipient with no legitimate connection to the case. And the committee notes itself I think are helpful too, to Rule 45C, because they indicate that Rule 45C was meant to give specific application to Rule 26G, which of course outlines a lawyer's duties when it comes to discovery requests. And Rule 26G says that as long as the legal arguments are not frivolous, that the request isn't interposed for bad faith or some improper purpose, and as long as it doesn't put an unreasonable burden and expense on the recipient, then the lawyer satisfies his or her duties. To the first of the district court judge's reasons, the subpoena was based on speculation. It's true that that's true to the extent that every discovery request is based on suspicion at least, which is what counsel articulated at oral argument below, but this was not just a blind shot in the dark. I mean, these were detailed planning communications. They're at ER 118-122 and 43, ER 43-46, and they contained about, they were to about the same number of people that went to this disruption and blockade, gave detailed instructions on what they were going to do, what to bring, when to show up, where to show up, and then one of the people that we subpoenaed was actually the sender of these emails. So this was a reasonable belief that these individuals either participated in this disruption and blockade or knew who did, and that was the purpose for our subpoena. And the district court didn't indicate that there was anything, any bad faith or improper purpose in that purpose. The second was that the district court said that Mount Hope's reasons for the subpoena shifted. We detailed this at pages 31 to 32 of our opening brief, but throughout this litigation, from the motion to compel, to our response to the motion to quash, to oral argument, we said that the only purpose for the subpoena was to find missing defendants, and we reasonably believed that these seven email account holders either participated in the action or knew who did. This is really satellite litigation over what was going on in Michigan, is that right? So what was at stake in the underlying action in Michigan? What was at stake in the underlying action, it was a freedom of access to clinic entrances case, where the church was, which applies to abortion clinics and churches, and it protects them from having a blockade, ingress or egress of traffic blocked, or having people put in reasonable fear of bodily harm. And the argument was that the defendants in that case did both. We only knew about who half the defendants were because they fled before police could identify all of them. And so the facts weren't really... So what were you trying to, what damages were you trying to get? The main purpose of this lawsuit was to get an injunction, because this group had been back to churches, this was sort of something they were doing across the country, and they prided themselves on returning to churches, in fact they returned to Mount Hope Church after the initial event. So the main purpose of the lawsuit was to get an injunction, which is what we ultimately settled the case. So that litigation is over? Correct, Your Honor. That litigation is over. You got your injunction, if I understand it, and you got a very small agreed damage award, which is very tiny compared to the sanction here. Very tiny compared to the sanction here. And the damage award was, you know, there was some damage, there was a fire, you know, some fire alarms pulled, there was dispute whether the defendants did that or prisoners that were scared did it. So the damages were minuscule in that case, the main purpose was to get an injunction. To the district court's final purpose for the sanctions order that Mount Hope didn't address the relevant First Amendment case law, first of all, when this case came up, it was Rise Up claimed a qualified First Amendment privilege on behalf of its users. It didn't indicate that it had been in contact with any of its users or whether they had objected and didn't offer any basis for the First Amendment privilege, which this court requires under Perry v. Schwarzenegger and a whole line of cases involving the NAACP v. Alabama qualified First Amendment privilege to remain anonymous. The person claiming that privilege has to show articulable, concrete facts that support that qualified privilege, support some reasonable claim to harassment or some chill on free association First Amendment activity. Rise Up didn't even attempt to make that showing and so the burden had not shifted to Mount Hope yet. Nonetheless, we made a good faith attempt to resolve the issue. We had several, exchanged several letters in ER 189 and 197, you can see the letters. We discussed the relevant case law. So I mean, I'm looking at the memo you put in and this is really a question for your adversary. At the record at 173, page 6 of your memo, you say, after talking about how they don't have standing, you talk about even if they do have standing, here's why you win and you set out your reasons. Correct, Your Honor. So I don't see how, as I say, it's really a question for your adversary, but I don't see how the district court was able to say that you had failed to do that. I don't understand that either and that was the point. We spent two pages, at least, analyzing just the Doe to the Mark case, analyzing its four factor test. So we fully analyzed the First Amendment to the extent that we could at that point without D.K. Watt even in the case making that concrete First Amendment claim. D.K. Watt, the one user that objected, didn't come in to file a motion to quash with Rise Up's opposition motion. So I think the record is clear that we, to the extent we could, engaged in First Amendment analysis and made a good faith basis to come to resolution. And this is a very unsettled area of law in addition. As this court noted in the In Re Online Speakers case, subject to an array of tests, it's unsettled, it often comes down to a balancing test. And oftentimes the resolution can come through a protective order, which is what Mount Hope suggested in this case to ameliorate any First Amendment concerns. Do you want to save some time for your rebuttal? If I may, Your Honor, thank you. Okay, for appellees, is that Mr. Theriot-Orr? Thank you, Your Honor. Good morning. May it please the Court, Devin Theriot-Orr for the Appellee Rise Up Networks. My colleague, Mr. Hildes, is going to address the Court for five minutes, if the Court will allow it. The ability to compel a non-party to produce discoverable information without prior court approval is a powerful tool. Rule 45 accordingly mandates that an attorney must take reasonable steps to avoid imposing undue burden or expense on the recipient of a subpoena. Mount Hope and its counsel violated this duty when they chose to ignore the longstanding requirement that a subpoena seeking to compel an online service provider to unmask an anonymous speaker be supported by more than a counsel's mere assertion that the subpoena is likely to lead to admissible evidence. Mount Hope was given not one, not two, but four opportunities to provide evidence in support of its prima facie case in Michigan, and it failed to do so. Instead, Mount Hope brazenly and repeatedly asserted that the seven e-mail users that were the subject of the subpoena have no First Amendment rights whatsoever. That's in the supplemental excerpts at pages 44 to 45. The district court rightly found this conduct to be inexplicable, and it did not abuse its significant discretion in supervising discovery and awarding fees to the non-parties who were compelled to appear in court to respond to Mount Hope's subpoena. I would like to address first how Mount Hope fundamentally misunderstands Rule 45, and second, why Mount Hope failed to take reasonable steps under the rule in this case. First, Mount Hope's interpretation of the rule would eviscerate protections for non-parties rendering... Excuse me, just so I understand. You refer to the court's role in supervising discovery, which sounds like the court had an overall supervisory role over the litigation. That isn't true. I'm talking about this particular case. Just this subpoena. We're just talking about this subpoena. Yes, that's exactly right, Judge Schroeder. The principle behind Rule 45 is that non-parties are given additional protections not available to parties, as this court found in Columbia Broadcasting Systems back in 1982. As between parties, broad discovery... I'm having difficulty following your argument because the district court gave three reasons for its award. It didn't just say, this is a brazen invasion of your First Amendment rights or anything like that. That might have been true. It might not have been true, but that's not what the district court said. That's what we need to review, is the district court's decision. I'm looking at the district court's order at page four of the record. He gives three reasons. First is that Mount Hope did not provide any non-speculative reason to believe that rise ups users possess any discoverable information. Second, that Mount Hope shifted its justification for the subpoena over the course of the time and resisted First Amendment analysis of this case to no avail. And thirdly, that Mount Hope's failure to analyze relevant case law and its motion to relevant legal standards before resorting to motions of practice unnecessarily protracted these proceedings. Now, I mentioned in giving you fair warning of the question that was coming, that there seems to be in their memo of law analysis. It may be one that was wrong. People make, you know, only one person can win, and so someone's arguments are often going to be wrong. But it was there. It wasn't inexplicably ignored, as the district court said. So am I right that we have to disregard the third of the grounds that the district court said because it was not accurate? Well, no, Your Honor. Let me first say that the court can affirm on any basis supported by the writers. But, you know, I think that the third basis for the judge's decision is founded more on the fact that the moving party in this case, the legal standards under Salehu and To The Mark require a party seeking to unmask an anonymous speaker to provide more than just speculation. So, yes, they cited the case. They cited the case in their cover letter. They cited the case in correspondence between the parties. But they at no point, and this is a finding by the court in its original order denying their motion to compel, at no point did they produce any evidence, a single piece of evidence to support the Prima Facie case in Michigan. And every single case, this court reviewed them in in-ring with anonymous speakers. Every case that is considered what a moving party needs to do to get from a non-party to unmask an anonymous speaker on the Internet, every single case says you need more than mere relevance. You can't say it's likely to lead to admissible evidence. You've got to say something more than that. This isn't Rule 26. This is Rule 45. So, I think what the judge was saying, perhaps unartfully, was that by failing to provide any evidence, they're not making, they're not, they're not following the relevance. And what they said in their brief was that we tried to do that, but we got stonewalled in all the other efforts we made. And therefore, we're making an argument that in those situations, we've met our burden. Perfectly appropriate argument, one that the district court appropriately rejected. But what's sanctionable in any of that? Right. And just as my co-counsel was going to suggest is the answer I was going to give you, which is that I think the fundamental problem here is that they never provided any evidence. And I'm not talking about evidence linking the email accounts. I'm talking about evidence in support of their prima facie case. What would that look like? Well, how about a declaration from somebody in the church who said, I was there. I was obstructed. I was trying to get into the church. I couldn't get into the church because these protesters were keeping me out. How about a declaration from someone who was inside the church who felt like they were, faced a threat of violence? Which is what they have to show in order to win their prima facie case. How did they get an injunction without evidence? That I don't know, Your Honor. But we're not privy to any of the actions in the underlying litigation. But you're talking about the Michigan action, aren't you? Right. But that's the thing about Salehu and To The Mart, is they both require the proponent of a subpoena to provide evidence that the underlying case is valid. In addition to the fact that the email accounts are actually relevant to the action. When they sent the subpoena out, what was the status of the underlying case? The underlying case was clear. Had they already gotten their injunction? They had not gotten their injunction. And in fact, the discovery deadline was rapidly approaching, which is another issue, is that at the time that we were at oral arguments before Judge Jones, they had two weeks to the discovery cutoff. So what are they going to do with this information? How are they going to get interrogatories and requests for production issued to these new people if they don't have enough time in the discovery, which had been extended several times in the underlying case? But I want to make sure to address before I turn things over to Mr. Hildas, the Perry v. Schwarzenegger argument, because I think this really illustrates how Mount Hope is really fundamentally misunderstanding Rule 45. Mount Hope is using Perry and is trying to – Perry has two substantive holdings here that I think are relevant to the case. One is procedural. One is substantive. And I think in Mount Hope's reply brief, they are misconstruing the procedural holding of the case in order to obfuscate the substantive First Amendment holding. The procedural holding of Perry is that as between parties, if you're in a discovery dispute between parties, party A says, I'm serving you this request for production. Party B says, there's a First Amendment interest at stake. The recipient of the discovery request as between parties does bear, as the counsel pointed out, a burden to come forward with some articulable First Amendment interest. That's true. Perry does not apply here. Perry is between parties. This is a non-party discovery case. Every single case cited in Mount Hope's reply brief at pages 6 through 9, every single one is a discovery dispute between parties. None of them are non-party discovery cases. So I think the burden-shifting regime in Perry is – has no bearing whatsoever to this case. This case is governed by Salehue and To the Mart and N. Ray Amrano speakers, all of which recognize that a proponent of third-party discovery seeking to unmask an Internet user bears an initial burden. This court has not decided exactly what that burden is. But N. Ray Amrano speakers said, in that case, they applied the highest standard. The district court said, you have to survive a hypothetical motion for summary judgment in order to get this. And in that case, the district court said that they had met that burden, and this court found that that was not clear error. So if they didn't meet their burden, they may lose – they don't get their subpoena enforced. That's correct. But does that mean their conduct is sanctionable? Well, that brings me to my second point, and I see I'm running out of my portion of the argument. But, I mean, I think that the point here is that, you know, in this case, a non-party was dragged into court, had to find a lawyer on short notice, and Mr. Hildas was pro bono in this case and was dragged into a litigation matter with very short deadlines. And in that case, as between non-parties, if you're going to serve a discovery request on a non-party, you better be sure that it's supported, that it complies with the applicable case law, and that it's supported in this case, since it's a First Amendment issue, it's supported by evidence supporting your prima facie case. They never did that. And I think under those circumstances, it was completely appropriate for the district court to say, as between these two parties, well, the non-party and the party, the party should bear the cost of having to go to court and fight this motion. So I think the district court was wholly appropriate and that this court can affirm the district court's decision. One final point is that, you know, I believe Mount Hope appears to believe that Rule 45's protections only apply to multimillion-dollar discovery disputes like the one in Columbia Broadcasting Systems, where you have, you know, attorneys who are having to review thousands of pages of documents, and so there's an expense that applies to the discovery. But Rule 45 should protect everyone equally, including someone like D.K. Watt, who didn't want to have his identity disclosed, didn't want to have his First Amendment rights violated, and was able to obtain counsel at last minute to object to the subpoena. And with that, if the court has no further questions, I'll turn the balance of the time over to Mr. Hildas. Thank you very much, Mr. Theriault. Mr. Hildas, welcome from, coming from Bellingham, I guess. Thank you, Your Honor. Actually, we were on vacation in Yellowstone and came back specifically for this argument after some legal work in Montana. Very good to be here. As my clients, as my colleague states, under 45C, we do not have to prove bad faith. However, in fact, we can prove bad faith. What Mr. Schoengart refers to repeatedly as a blockade, there's a YouTube video that the court cited of the church's own evidence put before the O'Reilly factor and aired on Fox News. This goes on for approximately 49 seconds. People chant about their right to be gay in the middle of the church. The church stated that they thought this was a skit that their pastor had put on. They throw a handful of leaflets up into the crowd. Two women kiss for a second and leave. No blockade, no parade of horribles, 49 seconds of First Amendment activity. From which the church and the Alliance Defense Fund seek to drag everyone who has any connection to this organization anywhere in the country into this litigation as the litigation is on the eve of settling and as the discovery cutoff is coming up. Just a matter of clarification, you represent who? I'm sorry, Your Honor. I represent D.K. Watt at Rise Up, who is one of the seven subscribers, who is absolutely terrified of this. They ask what the burden is. The burden is their First Amendment Freedom of Association right. We cite back to Claiborne Hardware. We cite NAACP v. Alabama. And those were even parties where everyone associated with an organization is thought to be dragged into court simply because they're associated. The Alliance Defense Fund conceded in front of the district court that they were not going to add these people as parties, but they wanted anyone who might have information about whoever organized this thing were into McCarthy, were into the list of names of the people whose names may be associated with people who did something that they don't like. And they argued exactly the opposite in Perry. They defended, in Perry, the Prop 8 organizers and said that their right to present, to have names of members was absolutely protected because it was their First Amendment Freedom of Association right and their right to organize. In this case, they say exactly the opposite. They can't produce anyone from the church. In the YouTube video that the court cites, the church member says they weren't frightened. They thought it was a skit that they were putting on. There is no harm here except to our class First Amendment rights. I was on the eve of a trial in federal court down the street. I had to drop everything to protect these folks' right simply to exist, which is a Right, and you won. And we did, but I had to spend a great deal of time on it. My client was terrified. And in the midst of this, as we're waiting the decision from the court, which is made clear they're going to find in our favor, they sent out another subpoena to Google for the same stuff. And I had to turn around and spend two hours on the phone with Google in San Jose asking them to hold off on complying with the subpoena until we had a ruling. And then they withdrew the subpoena when we had the ruling. It's a witch hunt. 45C exists to protect third parties who have nothing to do with it. My client admitted she wasn't there. She had nothing to do with the planning. She had nothing to do with the organization. We submitted that declaration with our motion to quash, and they went ahead anyway and asked for sanctions against us. There is an absolute First Amendment right to associate they've said so, here they say the opposite. There is an imperiousness to their actions. Anyone we like is good. They refer to our clients as hardly being patriotic speakers, and their brief is one of their justifications. That's what the First Amendment is intended to protect. They're saying that our clients, as in the video, by yelling, it's all right to be gay, are cutting off their right to religious practice. That's nonsense. And that was the whole basis. Our clients have Jesus on their side, according to them. And that should be sanctioned. That must be sanctioned. And they acted in bad faith. Co-counsel repeatedly said to them, show us the evidence. Show us a witness. Have a declaration from someone at the church that they were harmed. And they wouldn't do it. They just said, our view is that we win the balancing test. They didn't meet the balancing test. They didn't really attempt. And they changed their argument from, we want parties on the eve of trial, to, we want evidence leading to other people who may lead to people. Listen to us. Now we're talking about Michigan. Counsel, I hesitate to interrupt you when you're sort of revved up and you may be scoring points with the panel, but your time is up. So could you figure out a logical way to bring it to a conclusion? Thank you, Judge Gould. Yes. Basically, our position is that 45C was intended precisely to protect against this type of fishing expedition, going against non-parties who are not part of the litigation, who were not even part of the demonstration, even if they had been. The police said that there was no crime when they were called to the scene. This is a fishing expedition. It terrified our clients. It chilled their First Amendment rights because they didn't know what court they were going to get hauled into when, and under what circumstances, when it wasn't even possible under the rules. And therefore, this is sanctionable under 47, 45C. This is not simply a burden shifting. This is protecting the rights that were intended. Thank you, Mr. Hildes. Thank you, Your Honor. Now, we'll hear again from the appellant. And we'll, let's add a minute to appellant's time. Thank you very much. Because I'll let the other counsel go over. Thank you, Your Honor. A lot to address. I think the main first point I want to make, and I have three or four points in total to make, Doe to the Mart, the case that the parties were arguing controlled this case, controlled the right to anonymous speech within the Western District of Washington, does not require evidence of the underlying claims in Michigan. What Rise Up is essentially saying is that we should have had a whole separate litigation of the underlying case in the District of Washington. That's not what Doe to the Mart requires. We cite the test, quote the test at page ten of our reply brief. There's four factors, and none of them involve this sort of separate litigation. Now, the Salehu case, which is the case, another Western District of Washington case, that the court ultimately applied, applied a hybrid of Salehu and Doe to the Mart. That does require evidence of the underlying claim. But that's not even the case that the parties were arguing about. Like I said, this is a very unsettled area of law. There are an array of tests. And some, like, as this court said, an array of online speakers. Some of them require evidence of the underlying claims in the, in, of the case. Others don't. In any event, even if it requires that evidence, maybe that's a reason to, to deny the motion to compel or grant a motion to quash. But certainly not a basis for sanctions, which is, is what we're talking about. Most of Rise Up's and DK Watt's arguments go to the merits of the, of the subpoena request, not the sanctions order. Second, I think Perry v. Schwarzenegger, that the standard of, of the initial burden is on the party claiming the qualified privilege, I mean, this is not an absolute privilege to remain anonymous. It's a qualified privilege which requires evidence under NAACP v. Alabama. That's the case that DK Watt was claiming controlled their right to anonymity. So what was the non-speculative reason that you had to believe that these users possessed discoverable information? It, it was, it was based on these series of emails, these planning communications from one of the people, one of the seven people we subpoenaed, sent one of the seven email addresses, sent planning communications to several, to about the same number of people that showed up at this, at this blockade and disruption at the church. Included information on what to bring, where to meet beforehand. It was, it was sent after the, the participants were asked to RSVP. To tell them that they were coming. It, it made clear that it was available only to bashback members or what they called serious bashers. So all that combined said that this was, this was a group of people, about the same number that were there that either were there, participated or knew who was. And, and, you know, incidentally, DK Watt said she wasn't there. She filed an anonymous affidavit sort of late in the litigation saying that. She didn't say that she didn't know who was there. And, and, and that's, you know, our request is certainly calculated to lead to the discovery of admissible evidence. Did we know absolutely 100% sure who these people were and that they participated? No. I mean, if that's, if that was the case, we wouldn't have a need for the, the subpoena. But we had tried, we'd gone to great lengths to get this information from the defendants futilely. We named two defendants at the end of the the litigation who were hotmail accounts on these email communications. And happened to be defend, roommates of other named defendants. But we had to go to great lengths to get that information. And we also knew that through this litigation, one of the other seven email recipients was already a named defendant. Hadn't disclosed the email address, but after we served the, rise up with the subpoena, they acknowledged that that was her email address. The garlic is great email address. Same with Dinehouse, the person that sent the, these email communications. Only after we sent the, the email to rise up, or the subpoena to rise up, did did that person admit that that was, changed their discovery responses and said, okay, that is my email address after all. And, and so this was, that, that was what we were faced with in this case. We had no other way to get the information. So we filed a very targeted subpoena. I mean, there were other, this listserv had lots of other email addresses on it. It had 71 members. It had even communications that tangentially touched on the Mount Hope issue, blockade and disruption. We didn't ask for any of that. We didn't ask for any email communications. We asked a very targeted subpoena for only, in this case, seven identifying, identifying information for seven email account holders. Based on a reasonable belief that these, these individuals either participated or knew who did. Second, I want to correct one misstatement. It wasn't a 49 second demonstration. There was, there were two parts of the demonstration, as we detail in the brief. There was a blockade outside the front doors and, and parking lot of the church. Finally, this, this court's decision is show and be shown, even though third parties are, are certainly protected from subpoenas, unreasonable subpoenas. They place an undue burden on them. Show and be shown indicates that, that a third party has to comply with the subpoena like anyone else and, and it's sort of the everyman and everyone's evidence standard. Hey counsel, I think your extended time is up unless other judges have questions. We'll call the argument a day. Let me suggest that I know that motions can run high in sanctions cases. But at the risk of getting both sides mad at me here, I'll say, why don't, why don't you guys go out and share a, share a beer or a tofu like, like those Shakespeare lawyers. And. That's a good idea, your honor. Thank you very much. Thank you. Okay. Very good argument. Thank you.
judges: Rakoff, Schroeder, Gould